**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> TODD KAMAWU PAISHON, <br><br> Defendant-Appellant. | No. 20-50008 <br><br> D.C. No. 2:19-cr-00304-PA-2 <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted March 1, 2021
Pasadena, California

Before: SILER,** HURWITZ, and COLLINS, Circuit Judges.
Concurrence by Judge COLLINS

Todd "Nadine" Paishon appeals her conviction for the possession of stolen mail, asserting a *Miranda* violation. Paishon also seeks vacatur of two conditions of supervised release. We affirm the conviction but vacate her sentence and remand

---

\*  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*  The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

for the limited purposes of amending Special Condition 9 and correcting Standard Condition 14 of supervised release.

1. The only relevant statement obtained before Paishon was given valid *Miranda* admonitions was her response to an officer's inquiry that the seized mail was "already in the car" when she borrowed it from her friend. This is a false exculpatory statement. But, even assuming it was improperly admitted, any error was harmless, as "substantial, independent, and credible evidence" of Paishon's guilt was presented at trial. *United States v. Noti*, 731 F.2d 610, 615-16 (9th Cir. 1984).

The government introduced forty-four pieces of mail piled on the floor in the passenger side of the car, some of which was still stuck to a "fishing" tool. The pile of mail was easily visible to Paishon and would have taken an extended period to accumulate, as the fishing tool could only pick up four pieces of mail from a collection box per attempt, something confirmed by the government's mail theft expert and her friend in the car, Marco Contreras.

Contreras testified that he and Paishon had been together at a hotel earlier that evening and Paishon told Inspector Granger after receiving *Miranda* warnings that Contreras had left and returned to the car more than once with stolen mail. Paishon and Contreras were longtime friends and Contreras had a history of stealing mail. (Although Paishon argues the statement improperly corroborated Contreras' testimony, many of his other statements were separately corroborated.)

2

Moreover, the mail theft victims testified that they had deposited their mail in separate collection boxes, which were scattered across nearly a quarter of a mile and separated by multiple intersections. Officer Martinez testified that there was more mail in the car than he saw Contreras carrying and that Paishon was waiting in the car with her headlights on, across the street from the final collection box.

The overwhelming evidence that Paishon was a willing and knowing participant in mail theft rendered the admission of her pre-*Miranda* statements harmless beyond a reasonable doubt. *See United States v. Butler*, 249 F.3d 1094, 1101 (9th Cir. 2001).

2. Under 18 U.S.C. § 3583(d), conditions of supervised release must: "(1) be reasonably related to the goals of deterrence, protection of the public, and/or defendant rehabilitation; (2) involve no greater deprivation of liberty than is reasonably necessary to achieve those goals; and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission." *United States v. Napulou*, 593 F.3d 1041, 1044 (9th Cir. 2010). Paishon objects to Special Condition 9, only to the extent it limits the use of her preferred name "Nadine" in social settings without prior approval from her probation officer, and the government agrees. We vacate the sentence in part, and remand for the limited purpose of amending Special Condition 9 to remove this restriction.

3. The government also agrees to vacate Standard Condition 14. We vacate the sentence in part, and remand for the limited purpose of allowing the district court "to craft a supervised release condition that accords with [defendant's] criminal history." *United States v. Magdirila*, 962 F.3d 1152, 1159 (9th Cir. 2020).

Paishon's conviction is **AFFIRMED**. Her sentence is **VACATED** and **REMANDED** for the limited purpose of amending Special Condition 9 and correcting Standard Condition 14 of her supervised release.

FILED

APR 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*United States v. Paishon*, No. 20-50008

COLLINS, Circuit Judge, concurring in the judgment:

I agree that Paishon's conviction should be affirmed, but I would do so on the ground that there was no violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Paishon contends that our decision in *United States v. Henley*, 984 F.2d 1040 (9th Cir. 1993), establishes a bright-line rule that the "questioning of a handcuffed [person] who was seated in the back of a police car" is always "custodial interrogation" that requires *Miranda* warnings. While that will often, and perhaps typically be true, I do not think it is correct in the unique circumstances of this case.

*Henley* concluded that there was a custodial arrest in that case because, considering all of the circumstances, the defendant there was "not free to leave" and he had been "'taken into custody or otherwise deprived of his freedom of action in [a] significant way.'" 984 F.2d at 1042 (quoting *Miranda*, 384 U.S. at 444). But *Henley* did not mention or address the circumstance of a so-called "*Terry* stop," *see Terry v. Ohio*, 392 U.S. 1 (1968), and the test *Henley* applied— whether the person was "free to leave" or had had his or her "freedom of action" restrained in a "significant way"—is *not* the test for determining whether *Miranda* applies in the context of a *Terry* stop. As the Supreme Court has explained, "few motorists would feel free either to disobey a directive to pull over or to leave the

scene of a traffic stop without being told they might do so." *Berkemer v. McCarty*, 468 U.S. 420, 436 (1984). But the Court "[n]evertheless" has "held that a person detained as a result of a traffic stop is *not* in *Miranda* custody because such detention does not sufficiently impair the detained person's free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Howes v. Fields*, 565 U.S. 499, 510 (2012) (simplified) (emphasis added). Thus, instead of "accord[ing] talismanic power to the freedom-of-movement inquiry," we must ask "the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*. at 509 (simplified).

Applying these standards, I agree with the district court's conclusion that, under the circumstances of this case, Paishon was not "in *Miranda* custody" at the time of the challenged statements and was not then required to be given *Miranda* warnings. *Howes*, 565 U.S. at 510. The detention began as a middle-of-the-night *Terry* stop, and even though Pashion was asked a few minutes later to step out of the car and sit on the curb, Pashion does not contend that the encounter had at that point ripened into an arrest. The fact that Paishon was subsequently handcuffed, and then placed in a patrol car, would ordinarily cross the line to an arrest, but here Paishon was explicitly told four times—twice when being handcuffed and twice more when being placed into the police car—that Paishon was *not* under arrest.

2

In making the first of these four comments, the officer explained that the handcuffs were being used only for safety reasons based on the time of day (about 3:00 A.M.) and that their use did not mean that Paishon was under arrest. Moreover, the *Terry* stop was not impermissibly prolonged, because Paishon's passenger (Marco Contreras) had obstructed the officers' inquiries by providing a false name. *See Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015). Less than three minutes after finally confirming Contreras's identity, which was about 15 minutes after Paishon had been placed in the patrol car, an officer then asked Paishon a few questions, all of which related to the purpose of the *Terry* stop, and it is only the responses to those questions that are at issue here. Paishon obviously did not believe that an arrest had occurred by that point because, after that brief questioning was completed, Paishon later stated to another officer, "I hope I'm not getting arrested." I agree with the district court that these particular circumstances did not "present[] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*," *Howes*, 565 U.S. at 509, and that the officer was not required to give *Miranda* warnings before asking appropriate questions related to the *Terry* stop. The motion to suppress was properly denied, and the statements at issue were properly admitted.

I also agree that the district court abused its discretion by imposing a supervised released condition that effectively forbade Paishon, who goes socially

3

4

by "Nadine," from using that name in social settings without written permission from the probation office. There is no apparent penological need for extending the restriction to cover that specific usage, and given Paishon's transgender status, the prohibition imposes a uniquely significant burden. And I also agree that Standard Condition 14 must be vacated in light of *United States v. Magdirila*, 962 F.3d 1152 (9th Cir. 2020).

    For the foregoing reasons, I concur in the judgment.

# United States Court of Appeals for the Ninth Circuit

## Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)  A.  Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
    - ▶ A material point of fact or law was overlooked in the decision;
    - ▶ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
    - ▶ An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

   **B.  Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

- ▶ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
- ▶ The proceeding involves a question of exceptional importance; or
- ▶ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)  Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3)  Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4)  Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

**Petition for a Writ of Certiorari**
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ▶ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ▶ and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 10. Bill of Costs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form10instructions.pdf*

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to (*party name(s)*):

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**  **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED (each column must be completed) | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) (*Opening Brief; Answering Brief; 1st, 2nd, and/or 3rd Brief on Cross-Appeal; Intervenor Brief*) | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee | | | | $ |
| | | | **TOTAL:** | $ |

***Example:*** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:
No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);
TOTAL: 4 x 500 x $.10 = $200.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 10** Rev. 12/01/2018